IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| VICTORIA SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE SERVICE CORPORATION and JOHN DOES 1-10,<br><br>Defendants. | CV 22-50-BLG-SPW-KLD<br><br>FINDINGS & RECOMMENDATION |

Defendant Health Care Service Corporation, doing business as Blue Cross Blue Shield of Montana ("Blue Cross"), moves to dismiss Plaintiff Victoria Smith's putative class action complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc.7). For the reasons set forth below, Blue Cross's motion to dismiss should be granted.

I.      **Background**[1]

Smith underwent a total left hip replacement surgery in 2004. (Doc. 3 at ¶ 8). Smith's hip replacement eventually failed, and she underwent a second left hip

---

[1] Consistent with the standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Complaint and other evidence upon which the Complaint necessarily relies, the authenticity of which is not disputed.

surgery in May 2018. (Doc. 3 at ¶¶ 9-10). At the time of her second surgery, Smith

was insured under a Blue Cross health care plan ("the Plan"). (Doc. 3 at ¶ 13). Blue

Cross paid for medical expenses related to Smith's May 2018 hip surgery. (Doc. 3

at ¶ 14).

The Plan contains several provisions addressing Blue Cross's right of

subrogation:

**Subrogation**

1.    To the extent that Benefits have been provided or paid under this
      Contract, The Plan may be entitled to subrogation against a judgment
      or recovery received by a Member from a third party found liable for
      a wrongful act or omission that caused the Injury requiring payment
      for Benefits.
2.    The Member will take no action through settlement or otherwise
      which prejudices the rights and interest of The Plan under this
      Contract.
3.    If the Member intends to institute an action for damages against a
      third party, the Member will give The Plan reasonable notice of
      intention to institute the action. Reasonable notice will include
      information reasonably calculated to inform The Plan of facts giving
      rise to the third party action and the prospects for recovery.
4.    The Member may request that The Plan pay a proportional share of
      the reasonable costs of the third-party action, including attorney fees.
      If The Plan elects not to participate in the cost of the action, The Plan
      waives 50 percent of its subrogation interest.
5.    The right of subrogation may not be enforced until the Member has
      been completely compensated for the injuries.

(Doc. 8-1 at 4).

At some point after her failed hip replacement, Plaintiff filed suit against the

manufacturer of her prosthetic hip replacement. (Doc. 3 at ¶ 11). That suit

"resolved" in April of 2021. (Doc. 3 at ¶ 12). Several months later, on February 11,

2022, Smith's attorney wrote a letter to Blue Cross's subrogation vendor, the

Rawlings Company ("Rawlings"), recounting a prior attempt to obtain information

regarding a potential Blue Cross lien. (Doc. 11-1). The letter stated, in part:

> Nearly a year ago, we requested if your client did claim a lien in this matter, to provide this firm with the exact amount of the lien, the dates and services for which your client claims a reimbursement or subrogation right, and a legal explanation of how this lien survives Montana's Made Whole Doctrine. In addition, we asked for a complete copy of any health plan(s) through which Ms. Smith was insured, including the subrogation and reimbursement provisions. You have sent no response. Therefore, we will assume there are no charges for which you request subrogation.

(Doc. 11-1 at 1). The letter advised Rawlings that Blue Cross's "assertion of a lien

without proof that such a lien complies with Montana's Made Whole Doctrine

interferes, perhaps tortuously, with his [*sic*] right to resolve her personal injury

claims," and asked Rawlings to respond in writing within seven days if Blue Cross

"has any legal argument as to why payments made under Ms. Smith's health

plan(s) give rise to a lien that is not extinguished by Montana's Made Whole

Doctrine." (Doc. 11-1 at 1-2).

Rawlings responded by letter dated February 15, 2022. (Doc. 8-2). Rawlings

enclosed a four-page summary of the $42,245.56 in medical expenses paid by Blue

Cross on behalf of Smith. (Doc. 8-2). Rawlings advised Smith's attorney:

> If you have information that indicates our client has paid claims that are not listed on the attached summary, please advise so we may investigate. As you are aware, the amount of the claim **may increase** if additional health

3

benefits are paid. Therefore, please contact me prior to settlement to obtain the final amount.

(Doc. 8-2) (bold in original).

Smith filed this putative class action in state court on March 2, 2022, and Blue Cross removed the case to this Court on May 23, 2022 based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. (Doc. 1). (Doc. 3). Smith's Complaint includes three claims for relief: declaratory judgment (Count 1) breach of contract (Count 2); and insurance bad faith (Count 3). (Doc. 3 at 8-10). Count 1 seeks a declaratory ruling that Blue Cross may not subrogate before Smith and all class members "have been made whole and without conducting a made whole analysis" (Doc. 3 at ¶¶ 32-35). Count 2 alleges Blue Cross breached its contract with Smith by pursuing subrogation without first conducting a made whole analysis. (Doc. 3 at ¶¶ 36-40). Count 3 alleges that Blue Cross violated several provisions of Montana's Unfair Trade Practices Act, Mont. Code Ann. § 33-18-201, et seq. ("UTPA") in its dealings with Smith. (Doc. 3 at ¶¶ 41-44).

## II.   **Legal Standards**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 678-79 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations," a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 677-78.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association of the Advancement of Psychoanalysis, v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citing *Halkin v. VeriFone, Inc.,* 11 F.3d 865, 868 (9th Cir. 1993). Additionally, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.2d 752, 754-55 (9th Cir. 1994).

As a general rule, the court may not consider any materials outside the pleadings on a Rule 12(b)(6) motion. *Lee v. City Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court may, however, consider documents attached to the complaint, matters that are subject to judicial notice, and documents necessarily relied on by the complaint and whose authenticity no party questions. See *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee*, 250 F.3d at 688-89 (9th Cir. 2001). See also *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (document upon which the complaint necessarily relies may be considered on a rule 12(b)(6) motion).

The Complaint refers to the Plan and Rawlings' letter dated February 15, 2022. (Doc. 3). Thus, the Plan provisions and February 15, 2022, letter attached as exhibits to Blue Cross's motion (Docs. 8-1 and 8-2) are properly considered by the Court in determining whether the Complaint states a claim for relief. Although the Complaint does not expressly refer to the February 11, 2022, letter from Smith's attorney to Rawlings, the Complaint necessarily relies on this chain of correspondence between Smith's attorney and Rawlings. Smith has attached a copy of the February 11, 2022, letter as exhibit to her response brief, and the authenticity of the letter is not in question. Thus, the Court also considers the February 11, 2022 letter in determining whether the Complaint states a claim for relief.

//

## III.   **Discussion**

### A.   **Declaratory Judgment and Breach of Contract**

In Counts 1 and 2 of the Complaint, Smith seeks a declaratory judgment that Blue Cross may not subrogate before she and all class members "have been made whole and without conducting a made whole analysis," and alleges Blue Cross breached its contract with Smith by pursuing subrogation without first conducting a made whole analysis. (Doc. 3 at ¶¶ 32-40). Smith's declaratory judgment and breach of contract claims are thus premised on the underlying theory that Blue Cross failed to conduct a made whole analysis as required under Montana law.

Blue Cross contends both claims are subject to dismissal because, taking the allegations in the Complaint as true, it did not seek to enforce its right of subrogation and so was not required to conduct a made whole analysis. Smith counters that an insurer need only "assert" a right of subrogation by some informal means, including letters, and need not have taken any steps to "enforce" a right of subrogation to trigger the obligation to conduct a made whole analysis. Whether Smith has stated a claim for declaratory judgment and breach of contract thus turns in large part on what action by an insurer triggers the obligation to conduct a made whole analysis under Montana law.[2]

---

2 Where, as here, subject matter jurisdiction is based on diversity of citizenship, the Court applies the substantive law of Montana, as the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies., Inc.*, 306

"Subrogation is the 'substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.'" *Van Orden v. United Services Auto. Ass'n*, 318 P.3d 1042, 1045 (Mont. 2014) (quoting *Black's Law Dictionary* 1563-64 (Bryan A. Garner, 9th ed., West 2009)). The Montana Supreme Court recognizes subrogation as an equitable doctrine that "is designed to compel the ultimate payment of a debt by the one who in justice, equity, and good conscience should pay it." *St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.*, 847 P.2d 705, 707 (Mont. 1993) (quoting *Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 630 (Mont. 1977)). "The theory behind this principle is that absent repayment of the insurer the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in the absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss." *Skauge*, 565 P.2d at 630.

An insurer's right to subrogation "vests upon its payment of a claim." *Nimmick v. State Farm Mut. Auto. Ins. Co.*, 891 P.2d 1154, 1158 (Mont. 1995). However, Montana law has long recognized that an insurer's right to subrogation is limited by the "made whole doctrine," which provides "that when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is

_____

F.3d 806, 812 (9th Cir. 2002).

entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can *assert* its right of legal subrogation against the insured or the tortfeasor." *Skauge*, 565 P.2d at 632 (italics added). See also *Swanson v. Hartford Ins. Co. of Midwest*, 46 P.3d 584, 588 (Mont. 2002) (explaining that an "insurer may not *assert* subrogation rights until the insured has been fully compensated for his damages, including attorney fees and costs") (italics added); *Van Orden*, 318 P.3d at 1046 (quoting *Swanson* for the same proposition). As it pertains to health service corporations, the made whole doctrine is codified at Montana Code Annotated § 33-30-1102, which states that a "health service corporation's right of subrogation...may not be *enforced* until the injured insured has been fully compensated for the insured's injuries." Mont. Code Ann. § 33-30-1102(4) (italics added).

Montana law thus holds that an insurer may not "enforce" or "assert" a right of subrogation until it has conducted a made whole analysis. The Montana Supreme Court has used terms like "exercise" and "collect" interchangeably with the word "assert" when discussing an insurer's right of subrogation and the made whole doctrine. In *Swanson,* for example, the Court held "that it is the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can *exercise* any right of subrogation, regardless of any contract language

9

providing to the contrary." 46 P.3d 584, 589 (Mont. 2002) (italics added). As the Court later explained it, "we established in *Swanson* that an insurer has a duty to first determine whether the insured has been made whole before the insurer may *collect* subrogation." *Ferguson v. Safeco Ins. Co. of America*, 180 P.3d 1164, 1168 (Mont. 2008) (italics added).

Regardless of which term is used, Blue Cross argues, Montana law requires that an insurer take some "clear and obvious action" to assert, exercise, enforce, or collect on its right of subrogation before it is obligated to conduct a made whole analysis. (Doc. 20 at 6-7). As the cases cited by Blue Cross reflect, such a requirement is easily met where an insurer takes formal legal action to assert its subrogation rights. In *Talbot v. WMK-Davis*, LLC, for example, the Montana Supreme Court recognized that the insurer asserted a subrogation lien by filing a motion to intervene in the insured's action against a third-party. 380 P.3d 823, 824 (Mont. 2016). See also *DeTienne Assocs. v. Farmers Union Mut. Ins. Co.*, 879 P.2d 704, 706 (Mont. 1994) (noting that the insurer "intervened in [the insured's suit against a third-party tortfeasor] in order to assert its right of subrogation").

Similarly, in *Skauge*, the insured filed suit against a third-party, who then filed a third-party complaint alleging the insurer's right of subrogation and asking the court to determine who would be entitled to any damages for which it might be held liable. The insurer responded to the third-party complaint by filing a motion to

10

dismiss, and the subrogation issue was eventually severed from the tort action and tried separately. *Skauge*, 565 P.2d at 629. Those facts were sufficient to require a made whole analysis, as evidenced by the Court's determination that "an insurer may not assert subrogation rights until the insured has been fully compensated for his damages, including attorney fees and costs." *Skauge*, 565 P.2d at 632.

Analogizing to these cases, Blue Cross maintains Smith has not alleged facts demonstrating that it asserted its right of subrogation as required to trigger the obligation to conduct a made whole analysis. As Blue Cross accurately points out, Smith does not allege that it intervened in her lawsuit against the prosthetic hip manufacturer, or that it has filed suit against her to recover any funds she may have obtained through that lawsuit. Because Smith does not allege that it took any clear legal action to assert or enforce its right of subrogation, Blue Cross takes the position that it was not required to conduct a made whole analysis.

Smith does not disagree that an insurer may assert subrogation rights by filing suit against its insured or intervening in an existing lawsuit, but argues an insurer may also assert a right of subrogation by a variety of other means, "including letters, exclusions, and other informal negotiations." (Doc. 11 at 15). Smith relies on three Montana Supreme Court cases for the proposition that an insurer may assert a right of subrogation without taking any "clear and obvious legal action" against the insured. (Doc. 11 at 11-12 (citing *Blue Cross and Blue*

*Shield of Montana, Inc. v. Montana. State Auditor*, 218 P.3d 475 (Mont. 2009);

*Youngblood v. American States Ins. Co.*, 866 P.2d 203 (Mont. 1993); and *Swanson*,

46 P.3d 584)).

In *Montana State Auditor*, an insurer submitted forms to the Montana

Insurance Commissioner containing coverage exclusions under which the insurer

would not pay for health care costs if its insureds "received, or were entitled to

receive, benefits from any automobile or premises liability policy." *Montana State

Auditor*, 218 P.3d at 477. The Commissioner disapproved the forms, and the

insurer sought judicial review of the agency's final decision. *Montana State

Auditor*, 218 P.3d at 477-78. The Montana Supreme Court upheld the

Commissioner's decision, finding that the exclusions would effectively allow the

insurer "to exercise subrogation before paying anything to its insured," contrary to

Montana law. *Montana State Auditor*, 218 P.3d at 480. The Court emphasized that

an insurer may claim subrogation "[o]nly when the insured is made whole as

defined in Montana law, and then only after [the insurer] has paid out benefits to

insured." *Montana State Auditor*, 218 P.3d at 480. The Court found it would be

contrary to Montana law for the insurer "to enjoy the benefits of subrogation in the

circumstances allowed by the disputed exclusions." *Montana State Auditor*, 218

P.3d at 480. Notably, while the Court concluded that the insurer's forms did not

comply with Montana law, it did not address whether the insurer had asserted a

right of subrogation against its insureds or what action an insurer must take to do so. Consequently, *Montana State Auditor* is inapposite to the issue here.

In *Youngblood*, the plaintiff was injured in a car accident and her automobile insurer paid personal injury benefits to the plaintiff's health care providers pursuant to a liability insurance policy with a medical payment subrogation provision. The plaintiff subsequently settled her claims with the tortfeasor's insurance company, and paid a portion of her recovery to her own health insurance company "in a compromise settlement of that company's subrogation claim." *Youngblood*, 866 P.2d at 204. The plaintiff's automobile insurer also "sought to recover, via subrogation, from [the plaintiff] the payments it made on her behalf" under the policy. *Youngblood*, 866 P.2d at 204. The plaintiff filed suit against her automobile insurer requesting, among other things, "a ruling that the medical payment subrogation provisions" of the policy were void as against public policy. *Youngblood*, 866 P.2d at 204. While *Youngblood* is consistent with Smith's position that it is possible for an insurer to assert a subrogation claim even if it has not filed suit against its insured, the case does not describe what the insurance companies did to assert their subrogation rights and does not include any details about the various settlement agreements reached by the parties. Unlike here, the parties did not dispute that the insurer companies had asserted a right of

subrogation. Because *Youngblood* does not address what steps an insurer must take to assert a right of subrogation, it too is inapposite.

Finally, in *Swanson*, the plaintiffs were injured in a car accident involving another vehicle, and recovered some of their medical expenses from their own automobile insurer. *Swanson*, 46 P.3d at 586. The plaintiffs also brought a personal injury lawsuit against the driver of the other vehicle. *Swanson*, 46 P.3d at 586. Upon learning that the driver's insurer intended to make payments to the plaintiffs, the plaintiffs' insurer "wrote a 'subrogation claim' letter" notifying the driver's insurer of its intent to pursue subrogation to recover money it had paid on behalf of the plaintiffs. *Swanson*, 46 P.3d at 586. The driver's insurer issued a check payable to the plaintiffs and their insurer, but the plaintiffs' insurer refused to sign the check until after the plaintiffs had filed a breach of contract and bad faith action against it, thereby preventing the plaintiffs from receiving the full benefit of their settlement with the driver's insurer. *Swanson*, 56 P.3d at 586. In answer to one of three questions certified by the federal district court, the Montana Supreme Court held that an insurer may not assert or exercise subrogation rights until the insured has been fully compensated for all damages, including attorney fees and costs. *Swanson*, 46 P.3d at 588, 589.

Like the other cases Smith relies on, *Swanson* did not address what actions an insurer must take to assert a right of subrogation. In addition, to the extent

14

*Swanson* implicitly recognized that an insurer may assert subrogation rights by way of a "subrogation claim letter," the Court did not describe, consider, or evaluate the contents of the letter drafted by the plaintiffs' insurer.

Here, taking the allegations in the Complaint as true and considering the two letters that are properly part of the record, Smith does not allege facts demonstrating that Blue Cross asserted a right of subrogation and was required to conduct a made whole analysis. Smith does not allege that Blue Cross has contacted the manufacturer of her prosthetic hip to express its intent to subrogate against any recovery that she may have received as part of that lawsuit. Rather, Smith alleges that Blue Cross asserted its subrogation rights in the letter and enclosed chart Rawlings sent her on February 15, 2022. (Doc. 3 at 14-16).

Contrary to Smith's allegations, the letter itself says nothing about Blue Cross intending to assert a right of subrogation. (Doc. 8-2). Rawlings wrote the letter in response to Smith's February 11, 2022, letter asking for the amount of any subrogation lien Blue Cross might have and an explanation as to why the lien would not be extinguished by the made whole doctrine. (Doc. 11-1 at 1-2). Rawlings provided Smith with a four-page chart summarizing the $42,245.56 in medical expenses paid by Blue Cross, and advised Smith that "the amount of the claim may increase if additional health benefits are paid." (Doc. 8-2). Blue Cross

asked Smith to advise it of any claims that were not listed in the chart, and asked for an update as to the current status of her claim. (Doc. 8-2).

Although the chart of medical expenses paid by Blue Cross contains headings with statements about how to write a check to Blue Cross, the headings are boilerplate and did not direct Smith to make any payments to Blue Cross or otherwise seek to collect subrogation. Fairly read, the February 15, 2022, letter and enclosed chart provided Smith with notice of the extent of Blue Cross's subrogation rights and the amount of medical expenses it had paid under her health care plan, but did not seek to assert those subrogation rights. Instead of stating an intent to subrogate, Blue Cross simply requested an update on the status of her medical expense claims. As Blue Cross accurately points out, if the Court were to construe its letter as an assertion of its right of subrogation, Blue Cross would effectively be precluded from seeking the very information needed to conduct a made whole analysis in the first place.

Smith argues this Court must take her allegation that Blue Cross "illegally seeks to subrogate more than $40,000 from" her as true for present purposes, but such conclusory allegations of law are insufficient to defeat a motion to dismiss for failure to state a claim. As discussed above, Smith has not alleged facts from which it could reasonably be concluded that Blue Cross asserted its subrogation rights.

In sum, taking the allegations in the Complaint as true and considering the two letters that properly part of the record, the Court concludes that Blue Cross did not assert a right of subrogation against Smith and therefore was not required to conduct a made whole analysis. Because Smith's declaratory judgment and breach of contract claims are both premised on the underlying theory that Blue Cross failed to conduct a made whole analysis as required under Montana law, it necessarily follows that Counts 1 and 2 of the Complaint fail to state a claim for relief.[3]

Having so concluded, the Court need not address Blue Cross's argument that Smith also fails to state a claim for breach of contract because she does not allege facts demonstrating that she complied with the notice provision about subrogation in her health care plan. (Doc. 8 at 16).

**B.    Insurance Bad Faith**

In Count 3 of the Complaint, Smith alleges that Blue Cross violated several provisions of the UTPA, including particularly subsections (1), (4), (5), and (6) of § 33-18-201. (Doc. at ¶¶ 41-44). These subsections prohibit an insurer from engaging in the following unfair claims practices:

---

3 The Court notes that Smith's declaratory judgment claim would also fail for the additional reason that under the UTPA, a first party insured may not bring a claim for declaratory relief against the insurer. See *James Lee Constr., Inc. v. Government Employees Ins. Co.*, 2022 WL 19353, at *3 (D. Mont. Jan. 3, 2022), aff'd 2023 WL 195520 (9th Cir. Jan. 17, 2023).

(1) misrepresent[ing] pertinent facts or insurance policy provision relating to coverages at issue;

(4) refus[ing] to pay claims without conducting a reasonable investigation based upon all available information;

(5) fail[ing] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have bene completed;

(6) neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

Mont. Code Ann. § 33-18-201(1), (4), (5), (6).

Blue Cross argues Count 3 fails to state a claim for relief because, like her claims for declaratory judgment and breach of contract, Smith's statutory bad faith claim is premised on the theory that Blue Cross "engage[d] in illegal subrogation." (Doc. 3 at ¶ 44). As explained above, however, Smith has not alleged facts demonstrating that Blue Cross asserted a right of subrogation against her, illegally or otherwise. Because Smith's insurance bad faith claim is based on her conclusory allegation that Blue Cross engaged in illegal subrogation, the claim fails as a matter of law.

Blue Cross contends, and the Court agrees, that Count 3 also fails to state a claim for relief because the four statutory provisions Smith relies on do not apply to the facts alleged in the Complaint. Subsection (1) is inapplicable because, taking Smith's allegations as true, Blue Cross has covered her claims related to her hip surgery and did not misrepresent any "pertinent facts or insurance policy

18

provisions" related to the "coverages" provided under the Plan. Subsections (4) and (5) apply when an insurer refuses to pay a claim, or affirms or denies coverage of a claim, neither of which is alleged here. Finally, subsection (6) requires an insurer to pay an injured third party's expenses when liability is reasonably clear. Because Smith does not allege that Blue Cross failed to pay an injured third party, subsection (6) does not apply. Count 3 of the Complaint therefore fails to state a claim for relief and should be dismissed accordingly.

## C.   Dismissal with Prejudice

If, as the Court has concluded, the Complaint fails to state a claim for relief, Smith requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a). Rule 15(a) provides that leave to amend "shall be freely granted when justice so requires." Although leave to amend is liberally granted, dismissal with prejudice is appropriate where amendment would be futile. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). Amendment would be futile if "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

In support of her request for leave to amend, Smith stands by her position that she has "alleged [Blue Cross] illegally sought to subrogate against its insured in violation of its contract and [her] made whole rights." (Doc. 11 at 25-26). Smith maintains the parties are therefore "facing a straightforward factual dispute which

should be resolved through further litigation," and Blue Cross's "understanding of what it intended through its letters" should not be placed above Smith's understanding. (Doc. 11 at 26).

As discussed above, however, Smith has not alleged facts demonstrating that Blue Cross illegally sought to subrogate against her in violation of the Plan or her made whole rights. Significantly, Smith does not identify any facts that she could allege in an amended pleading that might be sufficient to state a claim for relief against Blue Cross. Absent any such showing, the Court finds that allowing Smith to amend her Complaint would be futile. Because amendment would be futile, Smith's claims against Blue Cross should be dismissed with prejudice.

## IV.   <u>Conclusion</u>

The Court concludes for the reasons outlined above the Smith's Complaint fails to state a claim for relief. Accordingly,

IT IS RECOMMENDED that Defendants' motion to dismiss pursuant to Rule 12(b)(6) be GRANTED and Smith's claims be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.

DATED this ⟨6ᵗʰ⟩ day of March, 2023.

Kathleen L. DeSoto
United States Magistrate Judge