IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| VICTORIA SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE SERVICE CORPORATION and JOHN DOES 1-10,<br><br>Defendants. | CV 22-50-BLG-SPW-KLD<br><br>FINDINGS & RECOMMENDATION |

Defendant Health Care Service Corporation, doing business as Blue Cross Blue Shield of Montana ("Blue Cross"), moves to dismiss Plaintiff Victoria Smith's amended putative class action complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 50). For the reasons set forth below, Blue Cross's motion to dismiss should be granted.

I.  **Background**[1]

---

[1] Consistent with the standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Amended Complaint and other evidence upon which the Amended Complaint necessarily relies, the authenticity of which is not disputed.

1

Smith underwent a total left hip replacement surgery in 2004. (Doc. 47 at ¶ 6). Smith's hip replacement eventually failed, and she underwent a second left hip surgery in May 2018. (Doc. 47 at ¶¶ 7-8). At the time of her second surgery, Smith was insured under a Blue Cross health care plan ("the Plan"). (Doc. 47 at ¶ 9).

The Plan contains several provisions addressing Blue Cross's right of subrogation:

> **Subrogation**
>
> 1. To the extent that Benefits have been provided or paid under this Contract, The Plan may be entitled to subrogation against a judgment or recovery received by a Member from a third party found liable for a wrongful act or omission that caused the Injury requiring payment for Benefits.
> 2. The Member will take no action through settlement or otherwise which prejudices the rights and interest of The Plan under this Contract.
> 3. If the Member intends to institute an action for damages against a third party, the Member will give The Plan reasonable notice of intention to institute the action. Reasonable notice will include information reasonably calculated to inform The Plan of facts giving rise to the third party action and the prospects for recovery.
> 4. The Member may request that The Plan pay a proportional share of the reasonable costs of the third-party action, including attorney fees. If The Plan elects not to participate in the cost of the action, The Plan waives 50 percent of its subrogation interest.
> 5. The right of subrogation may not be enforced until the Member has been completely compensated for the injuries.

(Doc. 51-1 at 4).

At some point after her failed hip replacement, Plaintiff filed suit against the manufacturer of her prosthetic hip replacement. (Doc. 47 at ¶ 11). Her claims

against the manufacturer included strict product liability, failure to warn, negligence, breach of warranties, violations of the Montana Consumer Protection Act, and punitive damages claims. (Doc. 47 at ¶ 12). On December 13, 2019, Smith's attorney, Jory Ruggiero, wrote to Blue Cross, stating he represented Smith on the products liability claim against the hip replacement manufactuer, and asking for written confirmation that Blue Cross "is not asserting any right to subrogation or reimbursement under Ms. Smith's health plan(s). . . ." (Doc. 51-2). On February 22, 2021, Ruggiero again wrote to Blue Cross, seeking written confirmation that Blue Cross was not asserting any right to subrogation against her recovery from the products liability case. (Doc. 51-3). Blue Cross, through its subrogation vendor Rawlings & Associates, wrote to Ruggiero on March 12, 2021, advising that Blue Cross had a right to subrogation under the policy language, and advising that he should not distribute funds from the products case until written confirmation was received regarding subrogation and reimbursements rights being "properly accounted for and discharged." (Doc. 51-4).

Ruggiero responded on March 15, 2021, stating that he understood Rawlings represented Blue Cross "regarding a potential lien they claim exists regarding Ms. Victoria Smith's metal on metal hip implanation." (Doc. 51-5 at 2). He noted that if Blue Cross claimed a lien, it needed to provide him the exact amount and a legal explanation for how any such lien "survives Montana's Made Whole Doctrine."

3

(Doc. 51-5 at 2). On March 18, 2021, Rawlings responded with a letter from Michelle Nadab, who advised that she would be handling any lien matters for the file, and noted that they needed additional information to finalize the matter. (Doc. 51-6 at 2).

On February 11, 2022, Ruggiero wrote a letter to Rawlings, recounting the prior exchanges of information, and confirming that he understood there was no subrogation in relation to Smith's hip replacement litigation. (Doc. 51-7 at 2). The letter stated, in part:

> Nearly a year ago, we requested if your client did claim a lien in this matter, to provide this firm with the exact amount of the lien, the dates and services for which your client claims a reimbursement or subrogation right, and a legal explanation of how this lien survives Montana's Made Whole Doctrine. In addition, we asked for a complete copy of any health plan(s) through which Ms. Smith was insured, including the subrogation and reimbursement provisions. You have sent no response. Therefore, we will assume there are no charges for which you request subrogation.

(Doc. 51-7 at 2). The letter advised Rawlings that Blue Cross's "assertion of a lien without proof that such a lien complies with Montana's Made Whole Doctrine interferes, perhaps tortuously, with his [*sic*] right to resolve her personal injury claims," and asked Rawlings to respond in writing within seven days if Blue Cross "has any legal argument as to why payments made under Ms. Smith's health plan(s) give rise to a lien that is not extinguished by Montana's Made Whole Doctrine." (Doc. 51-7 at 2-3).

4

Rawlings responded by letter dated February 15, 2022. (Doc. 51-8). Rawlings enclosed a four-page summary of the $42,245.56 in medical expenses paid by Blue Cross on behalf of Smith. (Doc. 51-8 at 3-6). Rawlings advised Smith's attorney:

> If you have information that indicates our client has paid claims that are not listed on the attached summary, please advise so we may investigate. As you are aware, the amount of the claim **may increase** if additional health benefits are paid. Therefore, please contact me prior to settlement to obtain the final amount.

(Doc. 8-2) (bold in original).

Smith filed this putative class action in state court on March 2, 2022, and Blue Cross removed the case to this Court on May 23, 2022 based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. (Doc. 1). (Doc. 3). Smith's Complaint included three claims for relief: declaratory judgment (Count 1) breach of contract (Count 2); and insurance bad faith (Count 3). (Doc. 3 at 8-10). Count 1 sought a declaratory ruling that Blue Cross may not subrogate before Smith and all class members "have been made whole and without conducting a made whole analysis" (Doc. 3 at ¶¶ 32-35). Count 2 alleged Blue Cross breached its contract with Smith by pursuing subrogation without first conducting a made whole analysis. (Doc. 3 at ¶¶ 36-40). Count 3 alleged that Blue Cross violated several provisions of Montana's Unfair Trade Practices Act, Mont. Code Ann. § 33-18-201, et seq. ("UTPA") in its dealings with Smith. (Doc. 3 at ¶¶ 41-44).

Blue Cross moved to dismiss the case, alleging it had not enforced a right to subrogate and thus was not required to conduct a made whole analysis. In a Findings and Recommendation dated March 7, 2023, the Court, after undergoing an analysis of Montana law relating to subrogation and the terms "assert" and "enforce" as used in Montana caselaw, agreed that Blue Cross had not asserted a right of subrogation against Smith in its letters and thus was not required to conduct a made whole analysis. (Doc. 34 at 17). Crucially, it was undisputed that Blue Cross did not direct Smith to make any payments and did not seek to collect subrogation amounts in the February 15, 2022 letter. (Doc. 34 at 17). For those reasons, the Court recommended dismissal of counts 1 and 2 of Smith's complaint. The Court further recommended dismissal of Smith's UTPA claim because she did not show that Blue Cross had engaged in illegal subrogation and, independent of that issue, because the four statutory UTPA provisions pleaded by Smith (Mont. Code Ann. §§ 33-18-201(1), (4), (5), and (6) did not apply to the facts alleged in the complaint. (Doc. 34 at 18-19).

Smith timely objected to the Findings and Recommendation, and the District Court rejected the Findings and Recommendation to the extent that it applied a Rule 12(b)(6) standard, and found that the case should have been analyzed under a Rule 12(b)(1) ripeness theory instead. (Doc. 40 at 7-8). However, it adopted the finding that Blue Cross did not assert a subrogation lien against Smith, and further

noted that Smith did not object to the recommendations on the declaratory judgment and insurance bad faith claims, and thus adopted them in full. (Doc. 40 at 10). Finally, the District Court rejected the recommendation that the case be dismissed with prejudice. (Doc. 40 at 11).

Smith appealed to the Ninth Circuit, which reversed the District Court's conclusion that the case was not ripe under Rule 12(b)(1), and affirmed the conclusion that the February 15, 2022 letter from Rawlings to Ruggiero did not constitute enforcement of subrogation. (Doc. 44 at 3). The Ninth Circuit remanded the case to the District Court with instructions to allow Smith to amend her complaint to include any additional factual allegations to support her claim.

On July 10, 2024, Smith filed her Amended Class Action Complaint for Declaratory Judgment, Damages and Injunctive Relief and Demand for Jury Trial (Doc. 47). Although the caption reflects a declaratory judgment allegation, and the prayer similarly contains a declaratory judgment request, the Amended Complaint has dropped the declaratory judgment count found in the original Complaint. Accordingly, Smith has two claims alleged: breach of contract and breach of the UTPA.

The new factual allegations made by Smith center on the March 12, 2021 letter from Rawlings to Ruggiero, which apparently was the first communication between Smith and Blue Cross and in which Smith was advised that Blue Cross

"has a reimbursement and/or subrogation lien/claim to the extent of benefits paid on behalf of [Smith] in this matter." (Doc. 51-4 at 3). Blue Cross argues that nothing in this letter changes the analysis regarding whether Blue Cross unlawfully enforced a subrogation right, and asks the Court to dismiss the case in its entirety. Smith disagrees, and claims that the fact that the letter instructed her to "refrain from distributing any funds" until the subrogation issue could be determined is a de facto subrogation because it limited her ability to enjoy her entire settlement with the prosthetic hip manufacturer until reimbursement rights had been properly accounted for the discharged. Smith argues that, read in conjunction with the February 11, 2022 letter listing the amounts Blue Cross had paid to Smith for her medical care, this letter properly asserted and enforced a subrogation lien against her without a made whole analysis.

## II.   **Legal Standards**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require

"detailed factual allegations," a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 677-78.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association of the Advancement of Psychoanalysis, v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citing *Halkin v. VeriFone, Inc.,* 11 F.3d 865, 868 (9th Cir. 1993). Additionally, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.2d 752, 754-55 (9th Cir. 1994).

As a general rule, the court may not consider any materials outside the

pleadings on a Rule 12(b)(6) motion. *Lee v. City Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court may, however, consider documents attached to the complaint, matters that are subject to judicial notice, and documents necessarily relied on by the complaint and whose authenticity no party questions. See *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee*, 250 F.3d at 688-89 (9th Cir. 2001). See also *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (document upon which the complaint necessarily relies may be considered on a rule 12(b)(6) motion).

The Amended Complaint refers to the all of the letters referenced above, as well as the Plan. (Doc. 47). Thus, the Plan provisions and letters attached to Blue Cross's motion are properly considered by the Court in determining whether the Complaint states a claim for relief.

### III. Discussion

#### A. Breach of Contract

In Count 1 of the Amended Complaint, Smith alleges Blue Cross breached its contract with Smith by "pursuing, asserting, and/or enforcing a right of subrogation" without first conducting a made whole analysis. (Doc. 47 at ¶ 56). Smith's breach of contract claim is thus premised on the theory that Blue Cross failed to conduct a made whole analysis as required under Montana law.

Blue Cross contends Smith's breach of contract claim should be dismissed, because, even taking the factual allegations in the Amended Complaint as true, it did not seek to enforce its right of subrogation and so was not required to conduct a made whole analysis. Blue Cross argues that the new facts from the March 12, 2021 letter do not provide anything substantively new to the analysis of whether the myriad communications between Rawlings and Smith's attorney constitute improper subrogation.

Smith counters that, based on her reading of the Ninth Circuit's opinion, she was required to show that Blue Cross had a lien, provided a final amount owed, or demanded payment. She argues that "the Ninth Circuit made clear that future allegation of any one of these three facts should suffice to show [Blue Cross] unlawfully asserted a right of subrogation against Plaintiff." (Doc. 54 at 10).   She further states that she has alleged all three facts through reading the March 21, 2021 and February 12, 2022 letters together: in March, Blue Cross states that it has a lien, it "functionally demands payment" by directing her to set aside money to discharge the lien, and then 11 months later in February 2022, it provides a list of medical payments and requests more information. According to Smith, this is an enforcement or assertion of subrogation without the made whole analysis required by the law and the Blue Cross contract.

Blue Cross responds by noting that the "functional demand" argument was squarely before the Ninth Circuit through Smith's appellate briefing, and that even with that argument, Smith still has not factually alleged that Blue Cross withheld or retained money from her. Blue Cross argues Smith still has not provided any factual basis for the conclusion that Blue Cross took any steps to enforce or assert a subrogation right other than letters advising Smith of contractual rights and seeking information.

As noted in the previous Findings and Recommendation, an insurer need only "assert" a right of subrogation by some informal means, including letters, and need not have taken any steps to "enforce" a right of subrogation to trigger the obligation to conduct a made whole analysis. Whether Smith has stated a claim for breach of contract thus turns in large part on what action by an insurer triggers the obligation to conduct a made whole analysis under Montana law.[2] As was the case when the parties briefed the motion to dismiss the first complaint in this case, there is a fundamental disagreement about what the law requires. There is also a fundamental disagreement about the significance of the particular word used to describe subrogation efforts: Montana law has used "assert", "collect" as well as

---

2 Where, as here, subject matter jurisdiction is based on diversity of citizenship, the Court applies the substantive law of Montana, as the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

enforce to describe subrogation. *See e.g. Skauge v. Mountain States Tel. & Tel Co.*, 565 P.2d 628, 632 (Mont. 1977) (using "assert"); *Ferguson v. Safeco Ins. Co. of America*, 180 P.3d 1164, 1168 (Mont. 2008) (using "collect"); Montana Code Ann. § 33-30-1102(4) (using "enforce"). Regardless of the terminology used, there has to be something more than an exchange of information relating to subrogation for there to be an inappropriate attempt to enforce subrogation without a made whole analysis.

The Court previously concluded, and the Ninth Circuit agreed, that there was no Montana case directly on point on this particular issue, namely "what constitutes 'assertion' or 'enforcement' when the allegation is that an insurer is *seeking* money from an insured." (Doc. 44 at 5, emphasis in original). However, in an analogous context, United States Magistrate Judge Lynch concluded, and United States District Judge Molloy agreed, that letters reflecting a disagreement about whether subrogation was appropriate do not constitute "enforcement" of a subrogation right. *Cramer v. John Alden Life Ins. Co.*, 763 F.Supp.2d 1196, 1213 (D. Mont. 2011). The plaintiff in *Cramer* was a participant in an ERISA health insurance plan, Blue Cross Blue Shield of Michigan, and she alleged her insurer improperly attempted to enforce a subrogation lien against her personal injury settlement. *Cramer*, 763 F.Supp.2d at 1201-1202. Cramer's policy stated it had a right of subrogation against a liable third party, and that "[o]ur right of subrogation

13

may not be enforced until You have been fully compensated for Your injuries." *Cramer*, 763 F.Supp.2d at 1201. Ingenix, the subrogation vendor for the insurer, notified Cramer of its right to subrogate, and requested that Cramer contact Ingenix before settling to confirm the final amount of the lien. *Cramer*, 763 F.Supp.2d at 1201. Subsequently, the third party insurer, Farmers, communicated with Cramer stating it would not pay policy limits until the lien had been resolved. *Cramer*, 763 F.Supp.2d at 1201.

Cramer's counsel ultimately secured payment of the full policy limits after promising Farmers she would withhold the lien amount in her trust account pending the outcome of a declaratory judgment action against Cramer's health insurer. *Cramer*, 763 F.Supp.2d at 1202. In the declaratory judgment action, Cramer argued that the pre-litigation communications should be construed as "enforcement" under the plan language. *Cramer,* 763 F.Supp.2d at 1212. Cramer claimed the correspondence in which Ingenix asked counsel to contact it before settling the case was "an enforcement of a subrogation claim because it prohibit[ed] Plaintiff's counsel from distributing those claimed funds until the existence of amount of the claim[ed] lien or subrogation claim [could' be resolved." *Cramer*, 763 F.Supp.2d at 1213.

The court disagreed, finding that the parties were simply disagreeing over whether Cramer had been made whole and whether Ingenix could subrogate.

*Cramer*, 763 F.Supp.2d at 1213. The court further found that to hold otherwise would essentially prevent insurers from communicating with insureds, or their counsel, to determine whether the insured had been made whole and to what extent, if any, subrogation was possible. *Cramer*, 763 F.Supp.2d at 1213.

Here, taking the factual allegations in the Amended Complaint as true and considering the letters referenced in the Amended Complaint and which are properly part of the record, Smith does not allege facts demonstrating that Blue Cross asserted or enforced or collected a right of subrogation and was required to conduct a made whole analysis. Smith does not allege that Blue Cross has contacted the manufacturer of her prosthetic hip to express its intent to subrogate against any recovery that she may have received as part of that lawsuit. Rather, Smith alleges that Blue Cross initially asserted subrogation rights in the March 12, 2021 letter and then re-asserted those rights in the letter and enclosed chart Rawlings sent her on February 15, 2022, each time without disclosing a made whole analysis required under the law and the insurance policy. (Doc. 54 at 9-11).

Leaving argument aside, the March 12, 2021 letter speaks for itself, and it states that Blue Cross has a subrogation lien or claim to the extent of benefits paid on behalf of Smith. This is accurate under the Plan language. It further instructs counsel to not impair that right of subrogation without confirming that subrogation and reimbursement rights have been accounted for and discharged. Smith argues

that the letter is an enforcement of subrogation right or lien, but her own responses to Rawlings contradict that: in her March 15, 2021 response, Smith referred to the Rawlings correspondence as "a potential lien" and in her February 11, 2022 letter, Smith again referred to the letter as notifying her of "a potential lien" and stated she assumed no such subrogation lien was being pursued. Smith's current assertion that the March 15, 2021 letter unambiguously enforced a subrogation right is belied by her own contemporaneous statements.

Smith also argues that the Ninth Circuit's determination that her claim was ripe because she alleged temporary loss of settlement money demonstrates that she has alleged sufficient facts to go forward on her breach of contract claim. (Doc. 54 at 20). But this conflates the Ninth Circuit's ripeness analysis with the standard applicable to Rule 12(b)(6) motions. In *Cramer*, the court similarly found that the plaintiff had standing to allege a claim because she alleged that her insurer was "in effect, wrongfully depriving her of a portion of the [insurance] benefits in contravention of the Plan . . . ." *Cramer*, 763 F.Supp.2d at 1208. Yet the *Cramer* court still found that while Cramer had standing to bring such a claim, it failed as a matter of law. Such is the case here.

Smith also makes much of the fact that the correspondence from Rawlings does not state it was undergoing a made-whole analysis, and argues that establishes that Blue Cross was inappropriately enforcing its right of subrogation. Smith

further argues Blue Cross's argument that it was seeking information needed to conduct a made-whole analysis "is beyond the pale of good faith argument." (Doc. 54 at 18). Leaving hyperbole aside, the Court does not agree that Blue Cross was not seeking necessary information. In its February 15, 2022 letter, the Rawlings agent provided the medical expenses it had paid, and further sought an update on Smith's claim and the current status of the claim. (Doc. 51-8 at 2). Contrary to Smith's assertions, these are exactly the types of information an insurer would need to seek in order to conduct a made-whole analysis. The Court has already determined this to be not sufficient to state a claim, and the March 12, 2021 letter notifying Smith of Blue Cross's rights under the Plan does not change this analysis.

### B.   Insurance Bad Faith

In Count 2 of the Amended Complaint, Smith alleges that Blue Cross violated Montana Code Annotated § 33-18-201(1), which prohibits an insurer from "misrepresent[ing] pertinent facts or insurance policy provision relating to coverages at issue." (Doc. 47 at ¶ 59.) Blue Cross argues that, as Smith did not object to the Court's findings and recommendation as to the bad faith claim, and further did not appeal that determination, she has waived her right to oppose dismissal of the claim. (Doc. 51 at 29). In the alternative, Blue Cross argues the claim fails on the merits, as Smith's Amended Complaint fails to allege a

misrepresentation of coverages, as opposed to subrogation entitlement, as well as fails as a matter of law because it is premised on a theory of illegal subrogation.

The Court does not find that Smith has abandoned her UTPA claim, but agrees that she fails to state a claim because, to the extent the claim is premised on her contention that Blue Cross inappropriately engaged in subrogation, she has not alleged facts to plausibly support such a claim.

### C. Dismissal with Prejudice

Smith has already had the opportunity to amend her pleadings to allege facts that would plausibly support her claims. The Court finds that further pleading could not be cured by the allegation of additional facts, and thus will recommend dismissal with prejudice. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).

### IV. Conclusion

The Court concludes for the reasons outlined above that Smith's Amended Complaint fails to state a claim for relief. Accordingly,

IT IS RECOMMENDED that Defendants' motion to dismiss pursuant to Rule 12(b)(6) be GRANTED and Smith's claims be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 30th day of September, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge