IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| VICTORIA SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE SERVICE CORPORATION and JOHN DOES 1-10,<br><br>Defendants. | CV 22-50-BLG-SPW-KLD<br><br>ORDER REJECTING FINDINGS AND RECOMMENDATION |

Plaintiff Victoria Smith ("Smith") brings this putative class action for a breach contract claim and an alleged violation of Montana's Unfair Trade Practices Act ("UTPA"). (Doc. 47). Defendant Health Care Service Corporation, doing business as Blue Cross Blue Shield of Montana ("Blue Cross"), moved to dismiss both claims. (Docs. 50, 51, 61). United States Magistrate Judge Kathleen L. DeSoto entered her Findings and Recommendation (Doc. 66) and recommends granting Blue Cross's Motion to Dismiss the Amended Complaint (Doc. 50).

Smith timely filed an objection. (Doc. 67). A party is entitled to de novo review of the findings and recommendation to which it specifically objects. Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(C). A court reviews for clear error the findings and recommendation to which no party timely objects. *McDonnell Douglas Corp.*

1

*v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). For the reasons stated herein, the Court rejects Judge DeSoto's Findings and Recommendation and denies Blue Cross's Motion.

## I.   Background[1]

Smith underwent a total left hip replacement surgery in 2004. (Doc. 47 at 2). The hip replacement eventually failed, and she underwent a second left hip surgery in May 2018. (*Id.* at 3). At the time of her second surgery, Smith was insured under a Blue Cross health care plan ("Plan") she purchased through the Health Insurance Marketplace®. (*Id.*).

The Plan contained several provisions addressing Blue Cross's right of subrogation:

**Subrogation**

1. To the extent that Benefits have been provided or paid under this Contract, The Plan may be entitled to subrogation against a judgment or recovery received by a Member from a third party found liable for a wrongful act or omission that caused the Injury requiring payment for Benefits.
2. The Member will take no action through settlement or otherwise which prejudices the rights and interest of The Plan under this Contract.
3. If the Member intends to institute an action for damages against a third party, the Member will give The Plan reasonable notice of intention to institute the action. Reasonable notice will include

---

[1] Consistent with the standards applicable to Federal Rule of Civil Procedure 12(b) motions, the following facts are taken from Smith's Amended Class Action Complaint for Declaratory Judgment, Damages, and Injunctive Relief and Demand for Jury Trial (Doc. 47) and other evidence upon which her pleading necessarily relied on, the authenticity of which is not disputed.

2

> information reasonably calculated to inform The Plan of facts giving rise to the third-party action and of the prospects for recovery.
> 4. The Member may request that The Plan pay a proportional share of the reasonable costs of the third-party action, including attorney fees. If The Plan elects not to participate in the cost of the action, The Plan waives 50 percent of its subrogation interest.
> 5. The right of subrogation may not be enforced until the Member has been completely compensated for the injuries.

(Doc. 51-1 at 4).

At some point after her failed hip replacement, Smith filed suit against the manufacturer of her prosthetic hip replacement. (Doc. 47 at 3). Her claims against the manufacturer included strict liability, failure to warn, negligence, breach of warranties, violations of the Montana Consumer Protection Act, and punitive damages claims. (*Id.*).

On December 13, 2019, Smith's attorney, Jory Ruggerio, wrote to Blue Cross, seeking "written confirmation that [Blue Cross was] not asserting any right to subrogation or reimbursement" from medical expenses Blue Cross paid in relation to Smith's failed prosthetic hip. (Doc. 51-2 at 2; Doc. 47 at 3–4). Ruggerio "d[id] not believe any subrogation claim [would] lie" under Montana's made-whole doctrine. (Doc. 51-2 at 2). If Blue Cross did assert a subrogation interest, Ruggerio requested that it "identify the specific policy language . . . to which [it] believe[d] [a] subrogation interest ar[ose]," "identify the . . . medical expenses to which [it] claim[ed] a subrogation interest," and "explain why . . . [a] subrogation interest

3

would survive Montana's [m]ade[-w]hole requirement." (*Id.*). Blue Cross did not respond.

Ruggerio sent a second letter on February 22, 2021, again seeking "written confirmation that [Blue Cross was] not asserting any right to subrogation or reimbursement." (Doc. 51-3 at 2). He repeated his belief that no subrogation claim "would lie" and again requested the same information he previously sought, should Blue Cross elect to assert a subrogation interest. (*Id.*).

Blue Cross, through its subrogation vendor, Rawlings & Associates ("Rawlings"), wrote to Ruggerio on March 12, 2021. The "letter serve[d] as notice . . . that [Blue Cross] has a reimbursement and/or subrogation lien/claim to the extent of benefits paid on behalf of [Smith]." (Doc. 51-4 at 3). The letter continued:

> This lien applies to any amount recoverable by the enrollee, whether by judgment, settlement, or otherwise, related to the injuries that gave rise to the medical benefits paid by [Blue Cross]. Neither you nor the member has any right to release or resolve [Blue Cross's] claim in any manner. Accordingly, do not engage in any conduct that might impair or alter [Blue Cross's] reimbursement or subrogation rights in any manner, including but not limited to entering into any settlement which purports to release or discharge in any way the medical expense claims covered by [Blue Cross]. Furthermore, do not distribute any settlement funds unless and until you have received written confirmation from our office that our client's subrogation and reimbursement rights have been properly accounted for and discharged.

(*Id.*).

Ruggerio responded on March 15, 2021, thanking Rawlings for the information "regarding [the] potential lien." (Doc. 51-5 at 2). He requested that "if

4

[Blue Cross did] claim a lien," it needed to provide him with the exact amount of the lien, the dates and services for which Blue Cross claimed reimbursement or subrogation, and "a legal explanation of how [the] lien survives Montana's [m]ade[-w]hole [d]octrine." (*Id.*). Three days later, Rawlings responded with a letter from Michelle Nadab, who advised that she would be handling lien matters for the file, and noted that they needed additional information to finalize the matter. (Doc. 51-6 at 2).

By April 2021, Smith's suit against the prosthetic hip manufacturer resolved (Doc. 47 at 10), and as far as the Court is aware, there was no correspondence between Ruggerio and Rawlings until the following year.

On February 11, 2022, Ruggerio wrote to Rawlings, seeking to finalize the matter. He stated:

> Nearly a year ago, we requested if [Blue Cross] did claim a lien in this matter, to provide this firm with the exact amount of the lien, the dates and services for which your client claimed a reimbursement or subrogation right, and a legal explanation of how this lien survives Montana's [m]ade[-w]hole doctrine. In addition, we asked for a complete copy of any health plan(s) through which Ms. Smith was insured, including the subrogation and reimbursement provisions. You have sent no response. Therefore, we assume there are no charges for which you request subrogation.

(Doc. 51-7 at 2). The letter advised Rawlings that Blue Cross's "assertion of lien without proof that such a lien complie[d] with Montana's [m]ade[-w]hole doctrine interfere[d], perhaps tortuously, with his [sic] right to resolve her personal injury

5

claims." (*Id.*). Ruggerio requested a response within seven days if Blue Cross "ha[d] any legal argument as to why payments made under . . . Smith's health plan(s) g[a]ve rise to a lien that [was] not extinguished by Montana's [m]ade[-w]hole doctrine." (*Id.* at 3).

Rawlings responded by letter on February 15, 2022. (Doc. 51-8). Rawlings enclosed a four-page summary of $42,245.56 in medical expenses paid by Blue Cross on behalf of Smith, and advised Ruggerio:

> If you have information that indicates our client has paid claims that are not listed on the attached summary, please advise so we may investigate. As you are aware, the amount of the claim **may increase** if additional health benefits are paid. Therefore, please contact me prior to settlement to obtain the final amount.

(*Id.* at 2) (emphasis in original).

Smith filed this putative class action in state court on March 2, 2022, and Blue Cross removed the case to this Court on May 23, 2022, based on diversity jurisdiction. (Docs. 1, 3). Smith's original complaint included three claims for relief: declaratory judgment, breach of contract, and insurance bad faith. (Doc. 3 at 8–10). Blue Cross moved to dismiss, alleging it had not enforced a right to subrogate and thus was not required to conduct a made-whole analysis. (Doc. 7). Judge DeSoto entered a findings and recommendation on March 7, 2023, recommending that Blue Cross's motion be granted. (Doc. 34).

6

Smith timely objected to the findings and recommendation (Doc. 35), and this Court rejected the recommendation to the extent that the case should have been analyzed under a Rule 12(b)(1) ripeness theory (Doc. 40 at 7–8). The Court adopted Judge DeSoto's finding that Blue Cross did not assert a subrogation lien against Smith. (*Id.* at 10).

Smith appealed to the Ninth Circuit Court of Appeals, which reversed this Court's ruling under Rule 12(b)(1), but affirmed the conclusion that the February 15, 2022 letter from Rawlings to Ruggerio did not constitute enforcement of a subrogation right. (Doc. 44 at 3). The Ninth Circuit remanded the case with instructions to allow Smith to amend her complaint.

Smith filed her Amended Class Action Complaint for Declaratory Judgment, Damages, and Injunctive Relief and Demand for Jury Trial ("Amended Complaint") on July 10, 2024. (Doc. 47). Though the caption and prayer for relief reflect a declaratory judgment claim and request, the Amended Complaint alleges only two claims: breach of contract and violation of Montana's UTPA.[2] The new factual allegations raised by Smith center on the March 12, 2021 letter from Rawlings to Ruggerio.

---

[2] Where, as here, subject matter jurisdiction is based on diversity of citizenship, the Court applies the substantive law of Montana, as the forum state. *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 812 (9th Cir. 2002).

## II. Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a pleading. *Navarro v. Block*, 250 F.3d 729, 739 (9th Cir. 2001). To survive a 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint alleges enough facts to draw a reasonable inference that the accused is liable. *Id.* Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a 12(b)(6) motion, a court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the nonmovant. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "Dismissal . . . is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III. Discussion

### A. Breach of Contract Claim

Blue Cross's argument moving to dismiss Smith's claims is straightforward: Blue Cross did not enforce its right to subrogate and therefore was not required to

conduct a made-whole analysis under Montana law. (Doc. 51 at 25–28). Judge DeSoto recommends granting the Motion, finding that "Smith does not allege facts demonstrating that Blue Cross asserted or enforced or collected a right of subrogation" which would trigger a made-whole analysis. (Doc. 66 at 15). Because no Montana case is directly on point, Judge DeSoto analogized this case to *Cramer v. John Alden Life Ins.*, 763 F. Supp. 2d 1196 (D. Mont. 2011), to conclude that merely notifying Smith of Blue Cross's subrogation rights under the Plan did not amount to such a right. (Doc. 66 at 17). She further reasoned that Smith's own response undercut her claim that Blue Cross asserted a lien, as she herself described the Rawlings' correspondence as a "potential lien." (*Id.* at 16). Finally, she rejected Smith's argument that Blue Cross improperly enforced its right of subrogation by failing to state it was conducting a made-whole analysis, finding instead that the parties' correspondence was "exactly the type[] of information an insurer would need . . . to conduct a made-whole analysis." (*Id.* at 17).

Smith objects and argues that Judge DeSoto erred in three respects: (1) by mistakenly premising the Recommendation on *Cramer*; (2) by incorrectly characterizing Smith's use of the term "potential lien" as fatal to her claim; and (3) by erroneously speculating that Blue Cross intended to conduct a made-whole analysis in its correspondence. Reviewing de novo, the Court agrees with Smith,

9

sustains the objections, and finds that she has plausibly stated a claim for relief under her breach of contract theory.

Regarding Smith's first objection, the Court agrees that *Cramer* is inapposite to the case here. In *Cramer*, 763 F. Supp. 2d at 1202, plaintiff Stefanie Cramer brought a putative class action under the Employee Retirement Income Security Act ("ERISA") asserting claims for declaratory relief, benefits, and equitable relief for breach of fiduciary duty. After she was injured in a December 2009 car accident, Cramer settled with the tortfeasor's insurance and recovered medical-pay benefits from her own carrier, Farmers Insurance Exchange ("Farmers"). *Id.* at 1201. Cramer was also covered under an ERISA-governed health insurance plan with Assurant, which had paid $1,900.92 in accident-related medical expenses. *Id.* Ingenix, Assurant's subrogation vendor, notified Cramer of its right to subrogate, and asked her to consult with Ingenix before settling so it could confirm the final lien amount. *Id.* In early April 2010, Ingenix again requested a status update and asked Cramer's counsel to contact it before settling. *Id.*

By May 2010, Farmers agreed to pay Cramer the $100,000 policy limit but informed her counsel of a medical lien claimed by Ingenix. *Id.* Cramer's counsel ultimately secured payment of the full policy limits after promising to hold the disputed lien amount in trust pending a declaratory judgment against Assurant. *Id.* at 1202.

10

To succeed in her equitable relief for breach of fiduciary claim, Cramer had to show that Assurant violated, or was reasonably likely to violate, ERISA or the terms of her insurance plan. *Id.* at 1211. The plan's provision at issue stated: "Our right of subrogation may not be *enforced* until You have been fully compensated for Your injuries." *Id.* at 1201 (emphasis added). Cramer argued that Ingenix's pre-litigation communications should be construed as "enforcement" of subrogation because the April 2010 request to contact Ingenix before settlement effectively prevented her counsel from distributing funds until the lien was resolved. *Id.* at 1212–13.

The district court rejected that interpretation. It concluded that the correspondence reflected an embroiled dispute over whether Cramer had been made whole and whether subrogation was available—not an attempt to enforce subrogation. *Id.* Construing routine communications or requests for information as "enforcement," the court reasoned, would effectively bar insurers from communicating with insureds or their counsel to determine whether subrogation was appropriate. *Id.* Although Assurant may have "asserted" a right of subrogation, it did not "enforce" one under the plan's terms. *Id.* Cramer's claim was therefore dismissed. *Id.* at 1213–14.

Here, unlike *Cramer*, Smith's claims are governed by Montana state law, not federal law. Whereas the district court applied ERISA-specific contract

11

interpretation principles in *Cramer*, this Court must determine whether Blue Cross "pursu[ed], assert[ed], and/or enforce[ed]" its right of subrogation within the context of Montana's made-whole doctrine. (Doc. 47 at 18).

Consistent with the Recommendation, this Court's prior ruling, and the Ninth Circuit's Memorandum, no Montana state case addresses the issue at hand—what constitutes assertion or enforcement when an insurer is alleged to be seeking money from an insured. (Doc. 66 at 12–13; Doc. 40 at 10; Doc. 44 at 5). Without such guidance, Judge DeSoto's analogy to *Cramer* is moderately defensible. Both cases involve nearly the same subrogation policy provision and similarly turn on what actions trigger enforcement or assertion of a subrogation right. Nevertheless, Montana law controls, and for this reason, the Court sustains Smith's first objection.[3]

Turning to Smith's second and third objections, the Court sustains both. First, the Court agrees with Smith that her use of the term "potential lien" in the March 15, 2021 letter is not fatal to her claim. The inquiry is whether Blue Cross's actions gave rise to an assertion of its right to subrogation before determining whether Smith had been made whole. Smith's characterization of the lien is thus tangential to whether Blue Cross asserted a lien in the first place. Second, it is not clear at this

---

[3] Smith suggests that her case is more like *Swanson v. Hartford Ins. of the Midwest*, 46 P.3d 584, 586 (Mont. 2002). In *Swanson*, the court addressed whether Montana's made-whole doctrine applied despite contract language to the contrary after the insurer initially refused to endorse and release a settlement check. Even if *Swanson* provides the appropriate legal context, the Ninth Circuit rejected Smith's reliance on *Swanson*, finding it inapposite to her claims. (Doc. 44 at 4).

juncture whether Blue Cross intended to conduct a made-whole analysis through its correspondence with Smith. The Court therefore rejects Judge DeSoto's conclusion to the extent she found otherwise. (*See* Doc. 66 at 17).

Conducting a de novo review, the Court ultimately denies Blue Cross's Motion, finding that Smith plausibly alleges that Blue Cross asserted a subrogation lien without first conducting a made-whole analysis. The parties are well aware that an insurer's right to subrogation in Montana is limited by the made-whole doctrine. The doctrine provides "that when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can *assert* its right of legal subrogation." *Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 632 (Mont. 1977) (emphasis added). The doctrine is also codified at Montana Code Annotated § 33-30-1102(4), which states that a "health service corporation's right of subrogation . . . may not be *enforced* until the injured insured has been fully compensated for the insured's injuries." (emphasis added). Montana courts have likewise held that "an insurer has a duty to first determine whether the insured has been made whole before the insurer may *collect* subrogation." *Ferguson v. Safeco Ins. of Am.*, 180 P.3d 1164, 1168 (Mont. 2008) (emphasis added). Montana law thus holds than an insurer may not enforce or assert or collect a right of subrogation until it has conducted a made-whole analysis.

13

Regardless of the terminology, the Ninth Circuit concluded that, with respect to Smith's original complaint, Montana courts would not view the correspondence with Rawlings as "conduct that triggers and insurer's duty to conduct a made-whole analysis." (Doc. 44 at 4). The panel found that the February 15, 2022 letter sent from Rawlings' subrogation department "did not say Blue Cross had a lien, provide a final amount owed, or demand payment." (*Id.* at 5). Considering that these factors are phrased in the disjunctive, a showing of any one of them would appear to nudge Smith's claim across the line from conceivable to plausible at this nascent stage.

Here, the addition of the March 12, 2021 letter does just that. It compels the Court to reasonably infer that Blue Cross said it had a lien and thus asserted a lien against Smith without first conducting a made-whole analysis. The letter initially provides "notice" to Smith that Blue Cross "has a reimbursement and/or subrogation lien/claim to the extent of benefits paid on behalf of [Smith]." (Doc. 51-4 at 3). This notice was perhaps a mere recitation of language under the Plan (Doc. 51-1 at 4), but the letter goes on.

It explains how the lien applies and outlines the rights Smith has under that lien. Then, the letter states: "do not . . . enter[] into any settlement which purports to release or discharge . . . the medical expense claims covered by [Blue Cross]" and "do not distribute any settlement funds unless and until you have received written

14

confirmation from our office that our client's subrogation and reimbursement rights have been properly accounted for and discharged." (Doc. 51-4 at 3).

Read in a light most favorable to Smith, this language plausibly supports her claim that Blue Cross asserted a right of subrogation before conducting a made-whole analysis. Indeed, Blue Cross makes no mention of a made-whole analysis. It instead instructs Smith to refrain from entering settlement or from distributing settlement funds until Blue Cross's rights have been "accounted for and discharged." A directive to reserve or refrain from settlement, or from distributing settlement funds, without accounting for the insurer's subrogation rights, would seem to have the net effect of an insurer withholding money that would otherwise be paid to the insured—which has been described by Montana courts as "de facto subrogation." *See, e.g., Rolan v. New W. Health Servs.*, 307 P.3d 291, 296 (Mont. 2013) (insurer received reimbursements and retained them). While the Court is not making such a determination now, it finds that the allegations, drawn from the March 12, 2021 letter and accepted as true, permit a reasonable inference that Blue Cross is liable. *See Ashcroft*, 556 U.S. at 663. The breach of contract claim is therefore adequately pled.

B.  *UTPA Claim*

The Court agrees with Judge DeSoto that Smith did not "abandon[] her UTPA claim . . . premised on her contention that Blue Cross inappropriately engaged in subrogation." (Doc. 66 at 18). Based on the Court's ruling above, however, the

15

Court rejects Judge DeSoto's recommendation to dismiss Smith's UTPA claim and instead finds that Smith has plausibly alleged a claim for relief.

## IV. Conclusion

For the reasons stated, IT IS HEREBY ORDERED that:

(1) The Findings and Recommendation (Doc. 66) are REJECTED.

(2) Defendant Health Care Service Corporation's Motion to Dismiss Amended Complaint (Doc. 50) is DENIED.

(3) The above-captioned case shall remain referred to United States Magistrate Judge DeSoto who will conduct all necessary hearings and submit to the undersigned proposed findings of fact and a recommendation for the disposition of all motions excepted from the magistrate judge's jurisdiction by 28 U.S.C. § 636(b)(1)(A).

DATED this 18th day of February, 2026.

SUSAN P. WATTERS
United States District Judge